Howard C. Platt Trust, Wells Fargo Bank & Union Trust Co., Trustee, et al. [1] v. Commissioner. Platt Trust v. Commissioner
Docket Nos. 2248, 2358, 2856, 2857, 2858, 2859, 2886, 2919, 3028, 3487.
United States Tax Court
1945 Tax Ct. Memo LEXIS 150; 4 T.C.M. (CCH) 715; T.C.M. (RIA) 45243; June 25, 1945
*150 On December 27, 1940, the X corporation, of which the petitioners were stockholders, declared a dividend payable in stock of another corporation. The stock so distributed had a value on the date of distribution in excess of its cost to X corporation. Held, the increase in the value of the stock did not constitute earnings and profits of X corporation and hence were not taxable to petitioners as dividends. Commissioner v. Estate of Timken, et al., 141 Fed. (2d) 625, followed. Harry R. Horrow, Esq., Tevis Jacobs, Esq., 33 Montgomery St., San Francisco, Calif., Walter C. Fox, Jr., Esq., and Robert H. Walker, Esq., 111 Sutter St., San Francisco, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent *151 determined deficiencies for 1940 as follows: Docket No.
Petitioner
Deficiency
2248
Howard C. Platt Trust
$ 1,367.87
2358
Estate of E.B.F. Tibbits
215,739.00
2856
J. A. Folger
5,147.97
2857
Peter Folger
704.25
2858
John M. and Edith P. Cunningham Trust
264.11
2859
Estate of C.E.L. Folger
163,946.20
2886
Evelyn C. Donohoe
650.21
2919
Elizabeth Moffitt Folger Trust
150,020.31
3028
Gladys Platt Pendleton
2,264.55
3487
Genevieve C. Kent
686.28
The single issue is whether the difference between the market value of stock distributed by a corporation to its stockholders, over the adjusted cost of such stock, constituted earnings and profits of the corporation so that the distribution constituted a dividend to the stockholders taxable to the extent of the increase. Findings of Fact The facts were all stipulated and may be summarized as follows: The petitioners are all residents of, or have their principal place of business in, San Francisco, California, with the exception of the petitioner, Gladys Platt Pendleton, who is a resident of San Mateo, California. The returns for the year in controversy were filed with the collector of internal *152 revenue for the first district of California. On December 27, 1940, the petitioners were all stockholders of J. A. Folger and Company, hereinafter called the California company. The California company was organized to carry on the manufacture and sale of coffee, tea, spices, baking powder and extracts, in the western States. It later extended its operations to include Texas and States in the Mississippi Valley. In 1908 J. A. Folger & Company, hereinafter called the Nevada company, was organized under the laws of Nevada to carry out the sale of coffee, tea, spices and the other products manufactured by the California company. At all times the California company and the Nevada company have conducted their business operations, finances and accounts separately. For some years after the incorporation of the Nevada company the California company supported it financially by giving it credit for merchandise supplied for resale prior to the time when the Nevada company manufactured its own supply. The plant, equipment, sales organizations and other facilities of each company were used for the separate benefit of each company. At all times the active management of the Nevada company was *153 in the hands of officers who were neither stockholders nor officers of the California company. Throughout the year 1940 the issued and outstanding capital stock of the California company consisted of 3,610 shares, with a stated value of $631,000. Throughout the year 1940 the total issued and outstanding stock of the Nevada company consisted of 36,000 shares of a par value of $25 per share. Immediately prior to December 27, 1940, the California company was the owner of 12,004 shares of stock of the Nevada company. For some years prior to 1940 the California company's business had declined, whereas that of the Nevada company had prospered. The California company suffered net losses from its own operations for the years 1925 to 1940, which were largely offset by dividends received from the Nevada company. The undistributed earnings and profits of the Nevada company as of December 31, 1940, were $1,993,045.06, practically all of which (except $3,111.68 at December 31, 1912) had been accumulated since February 28, 1913. The California company had accumulated earnings and profits at March 1, 1913, in the amount of $301,186.03. The earnings and profits accumulated after February 28, 1913, amounted *154 to $71,282.95 as of November 30, 1935; $91,209.79 as of November 30, 1918, and $7,325.95 as of December 31, 1932. In 1933 the California company sustained a loss of $40,468.56 and paid a dividend of $19,800, resulting in a deficit of $52,942.61 in earnings and profits accumulated after February 28, 1913; the deficit was charged to March 1, 1913 surplus. In 1934 and 1935 the California company sustained losses in the respective amounts of $10,878.62 and $32,964.44. Each of these losses was charged to March 1, 1913 surplus. On January 1, 1940, the California company had earnings and profits accumulated since February 28, 1913, in the amount of $84,391.36. The earnings and profits of the California company for the year 1940 were $151,030.30, exclusive of earnings and profits, if any, attributable to distribution in kind of the shares of stock of the Nevada company, hereinafter mentioned, and without diminution for the amount of alleged deficiencies in income tax, declared value excess profits and excess profits taxes totaling $494,643.14, as determined by the respondent against the California company for the year 1940. The earnings and profits of the California company at December 27, 1940, available *155 for the distribution of a taxable dividend on that date were $127,121.66, exclusive of earnings and profits, if any, attributable to the distribution in kind of the shares of stock of the Nevada Company and without diminution for the amount of the above-mentioned alleged deficiencies determined by the respondent against the California company for the year 1940. During the year 1940 the California company distributed pro rata to its stockholders cash in the following amounts and on the following dates: Date
Amount
August 15, 1940
$ 36,100
October 24, 1940
72,200
$108,300
The California company was not a personal holding company during the taxable year 1940. The directors of the California company determined to distribute to the shareholders of that company 10,830 shares of stock in the Nevada company which were owned by the California company. On December 27, 1940, the following resolutions were adopted: "RESOLVED: That a dividend is hereby declared, payable ratably forthwith to the shareholders of this corporation of record on its books at the hour of 3:30 P.M. on December 27, 1940, in shares of the capital stock of J. A. Folger & Company, a Nevada *156 corporation, owned and held by this corporation, at the rate of 3 shares of the capital stock of said Nevada corporation for each share of this corporation's stock now outstanding; and be it further "RESOLVED: That all of the 10,830 shares of capital stock of said Nevada Corporation comprising said dividend are hereby irrevocably segregated from the other assets of this corporation and are hereby irrevocably assigned and transferred to the respective shareholders of this corporation so ratably entitled thereto, and that the president and secretary of this corporation be, and they are hereby, authorized and directed forthwith in the name and on behalf of this corporation, to endorse the certificate or certificates now held by this corporation and representing said shares comprising said dividend for transfer, and forthwith to deliver said certificates so endorsed to said Nevada corporation for immediate transfer on its books of the shares represented thereby and comprising said dividend to the respective shareholders of this corporation so ratably entitled thereto." Pursuant to these resolutions the California company distributed to its stockholders on December 27, 1940, 10,830 *157 shares of the capital stock of the Nevada company, or three shares of the stock of the latter company for each share of the California company's stock outstanding. The number of shares held by each of the petitioners in the California company and the number of shares of the Nevada company's stock distributed to each in accordance with the above-mentioned resolutions are set opposite their respective names, as follows: Shares owned
Shares in
Shareholder in
in California
Nevada Company
California Company
Company
Distributed
Estate of E.B.F. Tibbits
1,310
3,930
Elizabeth Moffitt Folger Trust
1,000
3,000
Estate of C.E.L. Folger
1,000
3,000
Howard Chester Platt Trust
50
150
Gladys P. Pendleton
50
150
J. A. Folger
70
210
Peter Folger
20
60
Evelyn C. Donohoe
20
60
Genevieve C. Kent
20
60
John M. and Edith P. Cunningham Trust
20
60
3,560
10,680
Of the 10,830 shares so distributed, 8,004 represented shares purchased in 1909 including an increase thereof through nontaxable stock dividends in 1937. The adjusted cost of such shares was $48,861.63 and their March 1, 1913 value was $97,723.26; the balance, or 2,826 shares, including *158 an increase thereof through nontaxable stock dividends in 1937, was purchased in 1918 at an adjusted cost basis of $25,877.56. The fair market value of the stock of the Nevada company on December 27, 1940, was $90 per share. The respondent determined that the distribution of the Nevada company's stock constituted a dividend taxable to the petitioners to the extent of the difference between the value of such stock on the date of the distribution over its adjusted cost basis. It is stipulated that if the increase in value of the shares of the Nevada company's stock did not constitute earnings and profits of the California company at the time of the distribution, the amount includible in taxable income as a taxable dividend in respect of said distribution is the amount of $46,129.95 in the Estate of E.B.F. Tibbits, Docket No. 2358, and $35,213.70 in Elizabeth Moffitt Folger Trust, Docket No. 2919. Opinion VAN FOSSAN, Judge: The single issue here presented is whether or not the distribution by the California company on December 27, 1940, constituted a taxable dividend to the petitioners to the extent of the difference between the value of the stock distributed and its cost. Determination *159 of this issue depends upon whether or not the increase in value of the stock of the Nevada company constituted earnings and profits of the California company. In a companion case to the ones here before us, viz. J. A. Folger and Company, Docket No. 5014, wherein the California company was the petitioner, we held in a memorandum opinion entered this date, following General Utilities & Operating Co. v. Helvering, 296 U.S. 200, that the increase in the value of the stock did not result in taxable income to the California company. The respondent here contends that even though the California company realized no taxable income by reason of the increment in value of the stock of the Nevada company, nevertheless such increase constituted earnings and profits of the California company and that the petitioners are, therefore, taxable on the distribution to the extent of such increase. The petitioners concede that under section 115(b) of the Internal Revenue Code[1] they are taxable on the distribution to the extent of their respective pro rata shares of $127,121.66, the earnings and profits of the California company available for distribution on December 27, 1940, exclusive *160 of any earnings and profits attributable to the distribution on that date. They deny, however, that the increase in the value of the stock constituted earnings and profits of the California company or that they are taxable on the distribution because of such increase. The precise point here presented was decided adversely to the respondent in Commissioner v. Estate of Timken, et al., 141 Fed. (2d) 625, affirming 47 B.T.A. 494. The facts in that case were in all essential respects similar to those here present. The respondent contended, as he *161 does here, that the increase in the value of the stock distributed constituted taxable income to the stockholders of the distributing corporation. The Court of Appeals, in its opinion, answered this contention as follows: * * * but the difficulty with the proposition is, that a mere advance in the value of the property is not income. It is nothing more than an unrealized increase in value. * * * The respondent admits that the decision in the Timken case is adverse to his determination here. However, he seeks to draw support for his decision from Binzel v. Commissioner, 75 Fed. (2d) 989. An examination of that case, however, reveals that the decision of the court rested mainly on the failure of the petitioner to prove that the earnings and profits of the distributing corporation were not sufficient to cover the value of the stock at the time of the distribution. This feature serves to distinguish the Binzel case from the cases at bar. It is clear, under the authority of Commissioner v. Estate of Timken, et al., supra, that the increase in the value of the stock of the Nevada company did not constitute earnings and profits of the California company. See *162 also National Carbon Co., 2 T.C. 57. Consequently, the petitioners are taxable only upon their pro rata shares of $127,121.66. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of E.B.F. Tbbits, Deceased, James A. Folger and Robert W. Miller, Executors: J. A. Folger; Peter Folger; John M. and Edith P. Cunningham Trust, J. A. Folger and Peter Folger, Trustees; Estate of C.E.L. Folger, Deceased, J. A. Folger and Peter Folger, Executors; Evelyn C. Donohoe; Elizabeth Moffiitt Folger Trust, American Trust Company and Robert Watt Miller Trustees; Gladys Platt Pendleton; and Genevieve C. Kent.↩
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(b) Source of Distributions. - For the purpose of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distributions shall be applied against and reduce the adjusted basis of the stock provided in section 113.↩